**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

ELEPHANT BUTTE IRRIGATION
DISTRICT,

        Plaintiff,

v.                                                                     No. CIV 00-1309 BB/KBM

UNITED STATES DEPARTMENT OF THE
INTERIOR, BUREAU OF RECLAMATION,
et al.,

        Defendants.

**OPINION**

This matter comes before the Court for consideration of motions to dismiss filed by the United States (Doc. 19) and by El Paso County Water Improvement District No. 1 ("EPCWID") (Doc. 17). The Court held a hearing on the motions to dismiss, and following that hearing ordered supplemental briefing. Despite the arguments and explanations provided in the original briefs, at the hearing, and in the supplemental briefs, the claims Plaintiff ("EBID") is attempting to raise in this lawsuit remain vague. For this reason, and given the importance of water issues in this State and in Texas, rather than entering a final decision at this point, the Court hereby files this opinion granting the motions to dismiss, but expressly invites reconsideration if either party believes the Court has seriously misapprehended the scope of Plaintiff's claims. The parties shall have twenty days to submit comments or arguments concerning the opinion, should they wish to do so.

**Facts**

The Rio Grande Irrigation Project is a federal reclamation project located in the Rio Grande Valley in southern New Mexico and southwestern Texas. Plaintiff is an irrigation district and a division of the Project, and is located in New Mexico. EPCWID is also an irrigation district, is the other division of the Project, and is located in Texas. The Project was built initially with federal funds, which the districts were required to repay (with certain exceptions not pertinent here). A comprehensive explanation of the Project's history may be found in *Elephant Butte Irrigation Dist. v. Dep't of Interior*, 269 F.3d 1158 (10th Cir. 2001). The relationship between the United States, Plaintiff, and EPCWID has been a frequent subject of litigation. *See id.; see also United States of America v. City of Las Cruces*, __ F.3d __, 2002 WL 863137 (10th Cir.). This case, and a case currently pending in federal district court in the Western District of Texas, *City of El Paso v. El Paso County Water Improvement Dist. No. 1, et al.,* No. 3:01cv00010, are the latest examples of such litigation.

Plaintiff's relationship with the United States is governed by the federal reclamation acts, 43 U.S.C. §§ 371 *et seq.;* the Rio Grande Compact, 53 Stat. 785 (1939) (reprinted at NMSA § 72-15-23 (1978); and contracts the parties have entered into concerning delivery of water and subjects such as maintenance and operation of the water-distribution facilities. Plaintiff filed the Complaint in this case in order to raise several contractual issues, including the following claims: (1) the United States has breached several contracts with Plaintiff, including water-supply contracts, a 1979 contract under which Plaintiff took over operation and maintenance of the water-distribution network within its territory, and the informal terms of a non-binding operating agreement under which the parties have operated since 1979; (2) in 1998, the United States and EPCWID entered into a conversion contract

2

under which some Project water delivered to EPCWID would be converted from irrigation use to municipal and industrial use, through contracts with the City of El Paso; the Complaint maintains this conversion contract is one example of the United States' breaches of its contracts with Plaintiff; (3) Plaintiff plans to enter into similar conversion contracts with the City of Las Cruces, New Mexico, and the Complaint maintains the United States has no legal interest in such contracts, nor any right to revenue from such contracts; (4) Plaintiff claims it is contractually entitled to a binding joint operating agreement governing its relationship with the United States, and the Complaint asks this Court to declare the terms of such agreement; and (5) Plaintiff asks this Court to appoint a Special Master to govern all aspects of the relationship between Plaintiff, EPCWID, and the United States. The Court addresses each of these claims below, starting with those that are the most easily resolved.

**Appointment of a Special Master:** Although the commodity at issue in this case, water, is vital in the arid states of New Mexico and west Texas, Plaintiff has fallen far short of the showing necessary to have this Court even consider the drastic relief requested in the Complaint. Under F.R.C.P. 53(b), "reference to a master shall be the exception and not the rule." A district court should appoint a special master only in exceptional circumstances. *See Burlington Northern v. Dep't of Revenue*, 934 F.2d 1064, 1071 (9th Cir. 1991). In this case, Plaintiff has made only vague allegations of breach of contract, as well as providing two specific examples: the joint-operating-agreement issue, and the 1998 conversion-contract issue. Plaintiff has demonstrated no complicated dispute that would be beyond the Court's ability to analyze or understand or would be especially burdensome, and has not explained how a Special Master would be useful to the Court. The sole reason for the request appears to be that Plaintiff is dissatisfied with several decisions the United States has made over the years, as well as the failure of the parties' attempts to arrive at a binding

3

joint operating agreement. Absent some demonstration that extremely complex or time-consuming questions, not presently obvious, must be addressed, the Court must decline Plaintiff's request for a Special Master.

**Entitlement to Joint Operating Agreement:** In 1979, Plaintiff entered into a contract with the United States under which Plaintiff took over the operation and maintenance of the Project works within Plaintiff's boundaries. (Exh. E, Complaint) This contract contains a provision, in paragraph 6(d), which states "A detailed operational plan will be concluded between the United States and the District setting forth procedures for water delivery and accounting." Both Plaintiff and EPCWID, which took over maintenance and operation of its works in 1980, have been frustrated for years by the fact that the parties have been unable to agree on a permanent, binding joint operating agreement.[1] Instead, they have been operating under informal operating agreements.

In this lawsuit, Plaintiff asks the Court to enforce the paragraph 6(d) provision quoted above, decide that Plaintiff is entitled to a binding detailed operational plan, and declare the terms of such plan. The problem with Plaintiff's position is that the 6(d) provision is a classic "agreement to agree." Plaintiff and the United States contracted to enter into a detailed operational plan in the future. Such agreements to agree, however, are binding only if the terms of the agreement-to-be are definite enough to be enforced by a court. *See, e.g., Homestead Golf Club, Inc. v. Pride Stables*, 224 F.3d 1195, 1200-01 (10th Cir. 2000) (agreement to agree is unenforceable if it leaves open material terms for future consideration; court cannot create these terms for the parties; if the parties intend to negotiate further the terms of an agreement, a manifestation of willingness to enter into the agreement

---

[1] No party has explained to the Court what provisions such an agreement would include, or even what subjects would be covered by the agreement, other than the general "water delivery and accounting" topics mentioned in paragraph 6(d).

4

is only preliminary and not binding); *ATACS Corp. v. Trans World Communications, Inc.*, 155 F.3d 659, 666-67 (3d Cir. 1998) (a general agreement to enter a binding contract in the future fails as an enforceable contract because the parties have not come to agreement on the essential terms of the bargain and therefore there is nothing for the court to enforce). As noted above, none of the terms of the "detailed operating agreement" were agreed to by the parties, and *all* of the material terms of this future agreement were left open. Plaintiff does not ask the Court to enforce existing terms of an agreement, but to declare the terms of such an agreement. In effect, Plaintiff asks this Court to create a detailed operating agreement for the parties, where the parties failed to do so themselves. This the Court cannot do. *Id.* This claim, therefore, will be dismissed.

**Validity of 1998 Conversion Contract Between United States and EPCWID:** In 1998, the United States and EPCWID entered into a contract pursuant to 43 U.S.C. § 521, which allows the United States to enter into a contract to supply water from any project irrigation system for purposes other than irrigation, under certain conditions. Such a contract is called a conversion contract because water supplied to an irrigation district to be used for irrigation is converted into water to be used for other purposes, such as municipal and industrial use. The 1998 conversion contract was for the purpose of allowing the City of El Paso to purchase water for municipal use, by purchasing water-righted land[2] located within the boundaries of EPCWID. Plaintiff argues that the conversion contract is void, both because it constitutes a breach of Plaintiff's contracts with the United States and because it is a violation of federal law.

---

[2]Land carrying appurtenant rights to use a certain amount of irrigation water per year, as supplied by the United States and EPCWID.

Defendants[3] have raised two separate arguments in support of their motions to dismiss the conversion-contract claim. First, they contend there is no jurisdictional basis for this Court to address the claim, because the United States has not waived its sovereign immunity from suit for such claims. Second, they maintain Plaintiff, as a non-party to the conversion contract, has no standing to challenge it.

**(a) Jurisdiction – 43 U.S.C. § 390uu:** Plaintiff's central jurisdictional argument is based on 43 U.S.C. § 390uu, which is a waiver of the United States' sovereign immunity and provides, in pertinent part: "Consent is given to join the United States as a necessary party defendant in any suit to adjudicate, confirm, validate, or decree the contractual rights of a contracting entity and the United States regarding any contract executed pursuant to Federal reclamation law." Plaintiff's argument is simple. Plaintiff points out that it is a contracting entity under reclamation law, and that it wishes to adjudicate its contractual and statutory rights with respect to the 1998 conversion contract. In other words, Plaintiff claims the conversion contract is a breach of its contractual and statutory rights as a contracting entity, and § 390uu entitles it to litigate the effect of the conversion contract on those rights. Defendants, on the other hand, argue that § 390uu applies solely to entities that are parties to a reclamation contract, and entitles the parties to the contract to litigate their contractual rights only as to that particular contract. According to Defendants, Plaintiff, as a stranger to the conversion contract, has no right to use § 390uu to challenge the conversion contract, even if that contract could negatively impact on Plaintiff's reclamation contracts with the United States or on Plaintiff's statutory rights as a reclamation-act contracting entity.

---

[3]At times this opinion will refer to "Defendants," intending to include EPCWID and the United States, when it is more convenient to refer to them jointly rather than separately.

Neither party cited any authority directly on point, as to whether § 390uu's grant of jurisdiction, to adjudicate rights under a particular reclamation contract, is limited to the parties to that contract. The Court similarly was unable to locate such authority.[4] However, in *City of Tacoma v. Richardson*, 163 F.3d 1337, 1340-41 (Fed. Cir. 1998), the court pointed out that § 390uu is a broad waiver of sovereign immunity designed to allow any reclamation act contracting entity to bring suit against the United States if the entity has a claim arising out of a reclamation contract. This is consistent with the clear language of § 390uu, and the plain language of the statute must control. *See United States v. Hess*, 194 F.3d 1164, 1170 (10th Cir.1999). Under this Section, Plaintiff may sue the United States to vindicate its rights under any reclamation contracts in which Plaintiff has a legal interest as a contracting entity. This includes Plaintiff's claim that the 1998 conversion contract impairs Plaintiff's contractual rights under its own reclamation contracts with the United States. Although it is a closer question, this also includes the claim that Plaintiff is statutorily entitled, as a contracting entity, to void the conversion contract. Any other result could leave a contracting entity such as Plaintiff without a remedy if the United States committed a breach of contract or a violation of the reclamation statutes, by entering into a contract with another entity and thereby impairing Plaintiff's rights as a contracting entity. The Court will therefore find that it has jurisdiction to

---

[4]Courts have addressed § 390uu in only a limited number of cases, deciding issues such as whether injunctive or declaratory relief is available under that Section, *see Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 674 (9th Cir. 1993); whether entities that are not "contracting entities," but are merely third-party beneficiaries of a reclamation contract, may use § 390uu as a basis for jurisdiction, *see State of Wyoming v. United States*, 933 F.Supp. 1030, 1038-39 (D. Wyo. 1996); whether § 390uu provides jurisdiction over constitutional claims, as opposed to contractual claims, *see Sumner Peck Ranch, Inc. v. Bureau of Reclamation*, 823 F.Supp. 715, 749 (E.D. Cal. 1993) *and Westlands Water Dist. v. U.S. Dep't of Interior*, 850 F.Supp. 1338, 1410 (E.D. Cal. 1994); and whether the term "contract" as used in § 390uu is limited to the definition of "contract" found in 43 U.S.C. § 390bb, *see City of Tacoma v. Richardson*, 163 F.3d 1337, 1339-40 (Fed. Cir. 1998).

consider both Plaintiff's claim that the 1998 conversion contract constitutes a breach of Plaintiff's reclamation contracts, and the claim that Plaintiff, as a contracting entity and a division of the Rio Grande Project, has a statutory right to have the conversion contract declared void.

**(b) Conversion Contract as a Breach of Plaintiff's Contracts:** Finding jurisdiction over Plaintiff's claims does not end the matter; the Court must still determine whether Plaintiff has stated a breach-of-contract claim that should survive the motion to dismiss. Plaintiff's complaint did not identify a specific contract or contractual provision that has been affected in any way by the 1998 conversion contract. The Court, in the order requesting supplemental briefing (Doc. 33), expressly ordered Plaintiff to specify such contract or contracts. In response, Plaintiff has made only a general assertion that the conversion contract impairs Plaintiff's rights under the 1979 transfer contract, pursuant to which Plaintiff took over management and operation of a portion of the Rio Grande Project, and that the conversion contract also violates the series of reclamation contracts between Plaintiff and the United States. Plaintiff has not, however, provided any explanation of how these contracts are affected in any way by the 1998 conversion contract.

Under the conversion contract, water diverted by the United States for the benefit of EPCWID is authorized to be applied to uses other than irrigation; purchasers of water for non-irrigation purposes must pay a certain price for such water, which price will include payments to the federal government; any such federal revenues will be credited to EPCWID's future obligations to the federal government for construction charges; the United States must approve any contracts between EPCWID and third parties, such as the City of El Paso, concerning the sale of Project water; and other miscellaneous requirements such as encouragement of conservation are agreed to by the parties. (Complaint, Exh. H). The conversion contract concerns only water delivered to EPCWID,

8

and it is undisputed that this water is delivered downstream from the water delivered to Plaintiff. Any sale of EPCWID water, therefore, can have no effect on the quantity or quality of water delivered to Plaintiff. Plaintiff has not explained how a sale of water under the 1998 conversion contract could have any effect on its maintenance or operation of the diversion works, and thereby have an effect on the 1979 transfer contract. The Court is similarly unable to perceive how such an effect could occur. Furthermore, the Court's review of the reclamation contracts entered into by Plaintiff and the United States reveals no provision that would be violated by the sale of water to the City of El Paso by EPCWID.[5]

In support of its contractual argument, Plaintiff has submitted a copy of a 1944 contract allowing the sale of Project water to the City of El Paso. Exh. B, Mem. in Opp. to Mot. to Dism. Plaintiff was a party to this contract, and suggests that this somehow indicates Plaintiff had a contractual interest in any sale of Project water to the City of El Paso. However, under the 1944 contract, the sale of water was accomplished by having the City of El Paso buy 2000 acres of land, with appurtenant water rights, from landowners located within the territory served by Plaintiff, as well as 2000 acres of land, with appurtenant water rights, from landowners locate within EPCWID's service area. Plaintiff and its Project water were therefore integral parts of the 1944 sale, and Plaintiff had to be a party to the 1944 contract to accomplish the sale. As discussed above, however, Plaintiff has no direct contractual interest in the 1998 conversion contract. Therefore, even if § 390uu does give the Court authority to adjudicate Plaintiff's contractual rights with respect to the 1998 contract,

---

[5]Plaintiff refers generally to the number of reclamation contracts it has entered into, over the years, with the United States. Plaintiff appears to suggest that a contractual right may be implied from the penumbra of these contracts, and that this right has been violated by the 1998 conversion contract. The Court must reject this suggestion, for which no authority has been cited.

any claim based on an alleged breach of those contractual rights must be dismissed, since no breach of a specific contract has been adequately alleged.

**(c) 1998 Conversion Contract as a Breach of Plaintiff's Statutory Rights:** Plaintiff argues that under § 521, Plaintiff's permission was required before the Project water delivered to EPCWID could be converted to municipal or industrial use. Since such permission was not obtained, Plaintiff maintains the 1998 contract is void. § 521 states, in pertinent part, as follows: "The Secretary of the Interior...is hereby authorized to enter into contract to supply water from any project irrigation system for other purposes than irrigation...*Provided,* That the approval of such contract by the water-users' association or associations shall have first been obtained..."

Plaintiff maintains that § 521 requires approval of a conversion contract by all water users' associations (now referred to as irrigation districts) located within the irrigation project from which the water will be supplied; that the water for the 1998 contract will be supplied by the Rio Grande Irrigation Project; that Plaintiff is an irrigation district located within that Project; and that Plaintiff therefore has the right to void the contract because its approval was not obtained. Defendants maintain the only approval required is that of the irrigation district from which the water will be supplied; none of Plaintiff's water will be affected by the 1998 contract; and Plaintiff's approval was therefore not required.

It is true that the statutory language is somewhat ambiguous as to this point, as it does not specify which water users association's approval should be obtained. Furthermore, the parties have not directed the Court's attention to any legislative history that might clarify the intent of Congress. However, in construing § 521 the Court is aided by the principle that "interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with

the legislative purpose are available..." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982). It would be absurd to allow Plaintiff, which has no interest in the water delivered to EPCWID, to veto the joint decision of the United States and EPCWID to sell a portion of EPCWID water to the City of El Paso. This absurdity is demonstrated by examining what would occur if Plaintiff's argument were to be applied to other irrigation projects. Plaintiff's position is that every irrigation district receiving water from a particular project must consent if one of the districts receiving such water wishes to enter into a contract to convert the use of some of its water to municipal and industrial use. However, many of the reclamation projects in the United States serve multiple irrigation districts; and one, the Central Valley Project, delivers water to dozens of districts.[6] Congress cannot have intended that each and every district receiving water from an irrigation project have veto power over another district's sale of its own water, merely because all the districts receive water from the same project. This would severely restrict what legal commentators have generally viewed as a broad grant of statutory discretion to the Reclamation Bureau. *See, e.g.,* A. Dan Tarlock, *Law of Water Rights and Resources* § 5: p. 81, n. 11 (2002); Peter M. Lacy, *The Irrigated Desert and Imperiled Salmon: "Reclaiming" Illegally Spread Water Via the Endangered Species Act*, 4 U.Den.W.L.Rev. 351, 389 (2001); Brain Gray, et al., *Transfers of Federal Reclamation Water: A Case Study of California's San Joaquin Valley*, 21 ENTL 911, 946-47 (1991). Plaintiff's argument would open the door for arbitrary, self-interested decisions by districts which may want to compete to sell their water. By enacting § 521, Congress obviously intended to assist in the growth of the water-starved West by allowing conversion of water from agricultural uses to municipal uses, where

---

[6]This information has been obtained from the United States Bureau of Reclamation website, www.usbr.gov.

the municipality has no other feasible alternative source of water. Plaintiff's veto-power argument would place substantial and, in some cases, insurmountable obstacles in the way of such conversions.[7] The only reasonable construction of the statute is that only the irrigation district or districts from which the water will be supplied, and which are therefore directly affected by the conversion contract, must consent to the conversion contract.

It should be noted that Plaintiff and EPCWID have always been treated as separate entities by the United States. Reclamation contracts, such as the 1979 and 1980 transfer contracts with Plaintiff and EPCWID respectively, have been entered into separately with each entity. There is no apparent practical reason to treat them as a unit where § 521 conversion contracts are concerned, and Plaintiff has suggested no such reason. Plaintiff's statutory argument regarding its ability to veto the 1998 conversion contract will be rejected.

**Possible APA Claim Regarding Conversion Contract:** Plaintiff maintains it has a claim under the judicial review provision of the Administrative Procedure Act, 5 U.S.C. § 702, because the United States acted arbitrarily, capriciously, or contrary to law in entering into the 1998 conversion contract. Defendants argue that Plaintiff has no standing to bring an APA action, again pointing out that Plaintiff is not a party to the conversion contract and that Plaintiff's water is not affected in any way by that contract.[8] In order to have standing to raise an APA claim, a plaintiff must show that it

---

[7]In this case, for example, Plaintiff has stated that it has not consented to the conversion contract, and will not consent. Complaint, par. 28b. This intransigence would leave the City of El Paso without a major source of water to supply its growing population.

[8]The United States also argues that Plaintiff did not specify a statute providing an independent basis for APA jurisdiction, and that the APA itself does not provide such jurisdiction. The Court agrees that Plaintiff must claim a violation of a "relevant statute" separate from the APA, in order to challenge an agency action. *See, e.g., Sierra Club v. Martin*, 110 F.3d 1551, 1555 (11th Cir. 1997). The only possible statutory challenge for Plaintiff in this case is § 521,

12

suffered a sufficient injury in fact, and that it has "prudential standing"--that is, the interest the plaintiff seeks to protect is arguably within the zone of interests to be protected or regulated by the statute in question. *National Credit Union Admin. v. First Nat'l Bank & Trust Co.*, 522 U.S. 479, 488 (1998).

As to the injury-in-fact prong of the standing requirement, Plaintiff contends it will suffer harm from the conversion contract because the United States, not Plaintiff, will be receiving revenue from the conversion contract. Plaintiff points out that under the Warren Act, 43 U.S.C. §§ 523-526, both Plaintiff and EPCWID are credited with a portion of the proceeds derived from the delivery of surplus Project water to the Hudspeth Irrigation District, in Texas. Plaintiff appears to suggest it is entitled to a similar share of the proceeds derived from the 1998 conversion contract, and was deprived of that share by being excluded from the contract. Plaintiff has failed, however, to provide any explanation of why it is legally entitled to such a share.

The Warren Act contract with Hudspeth Irrigation District involves only surplus water from the Rio Grande Project--that is, available water over and above those amounts the United States is contractually obligated to deliver to Plaintiff, EPCWID, and the country of Mexico. *See Hudspeth County Conservation & Reclamation Dist. No. 1 v. Robbins*, 213 F.2d 425, 431-32 (5th Cir. 1954);

---

discussed *supra*. The Court therefore assumes Plaintiff is attempting to raise a violation of that provision by way of its APA claim. The Court also notes, however, that where an alternative means of obtaining judicial review of an agency action is available, the APA may not be used to obtain such review. *See Hayes v. Whitman*, 264 F.3d 1017, 1025 (10th Cir. 2001) (review of the plaintiff's claim was available under Clean Water Act, so was not available under APA). As discussed above, the Court holds today that § 390uu provides a basis for Plaintiff to raise its § 521 challenge to the 1998 conversion contract. If this holding is correct, the APA is not available as another means of challenging the contract. In case this holding is determined to be incorrect, however, the Court will discuss the APA standing question as an alternative basis for dismissal of the conversion-contract claim.

*see also Goshen Irrigation Dist. v. Pathfinder Irrigation Dist.*, 62 F.Supp.2d 1218, 1247-49 (D.Wyo. 1999) (explaining priority of irrigation-district water rights over rights of Warren Act contractors). The Warren Act specifically allocates proceeds from Warren Act contracts to the "project or division of the project to which the construction cost has been charged." 43 U.S.C. § 526.[9] Conversion contracts such as the 1998 contract, on the other hand, involve Project water that is a portion of the water the United States delivers to Project irrigation districts, rather than surplus water. § 521. Proceeds from the sale of conversion-contract water shall be "covered into the reclamation fund" and "placed to the credit of the project from which such water is supplied." In other words, the entity supplying the water for the conversion contract is to receive the credit for such proceeds, and Plaintiff has no legal interest in the proceeds of the 1998 conversion contract.[10] Plaintiff has therefore failed to show that it suffered any injury in fact arising out of the 1998 contract.

In addition, Plaintiff fails to satisfy the "prudential standing" requirement imposed in APA cases. The zone of interests protected by § 521 include the following: (1) supplying water to municipalities that have no other adequate water sources, and need to purchase water from irrigation-district members; (2) protecting prior appropriators, whose water rights may be affected by a conversion contract; (3) protecting irrigation districts supplying the water for the conversion contract; and (4) protecting any other irrigation districts that may have their water rights impaired as a result

---

[9]It is undisputed that the construction costs of the Rio Grande Project were charged to Plaintiff and EPCWID, so both districts are entitled to a portion of the proceeds from the Warren Act contract with Hudspeth Irrigation District.

[10]The statute and the 1998 contract also indicate that Plaintiff's argument, that the United States will be receiving proceeds from the contract, is factually wrong. The United States will collect a portion of the proceeds from the sale of water, but will give credit to EPCWID for the amounts of any those proceeds. 1998 Contract, Exh. H to Complaint.

of the conversion contract. Plaintiff's only declared interest is its claim to a share of proceeds from the contract, even though it will supply none of the water for the contract and its water deliveries will not be affected in the least by the contract. Plaintiff's desire to veto the conversion contract under these circumstances is not within the zone of interests protected by § 521. In fact, it is inconsistent with the purposes of the statute. *See Clarke v. Securities Industry Ass'n*, 479 U.S. 388, 399 (1987) (right of review is denied if plaintiff's interests are marginally related to, or inconsistent with, purposes implicit in the statute). Plaintiff therefore lacks prudential standing to challenge the conversion contract under the APA. [11]

**Plaintiff's Right to Convert Water to Other Uses, Without Consent of United States:** In apparent contradiction of its arguments concerning the 1998 conversion contract and its right to void that contract, Plaintiff has asked for a declaratory judgment declaring, in essence, that it has the right to enter into conversion contracts with the City of Las Cruces, New Mexico, without obtaining consent from the United States. Plaintiff cited no authority for the proposition that it may unilaterally apply Project water, supplied by the United States for irrigation purposes pursuant to statute and contract, to any other purposes it might wish. For its part, the United States did not even discuss this question, stating the following: "...the United States assumes this is a gratuitous allegation and the application of § 521 is not at issue..." (Def. U.S. Suppl. Mem., p. 6) As the Court understands it, the application of § 521 is definitely at issue. In Plaintiff's initial brief in opposition to the motions to dismiss, Plaintiff included several sentences indicating that it intends to enter into conversion

---

[11]Plaintiff has not alleged or argued that it intended to try to enter into its own conversion contract allowing the sale of water to the City of El Paso, so there is no issue here of Plaintiff being a competitor of EPCWID, which is one circumstance under which prudential standing has been found. *See Credit Union*, 522 U.S. at 490-92.

contracts with the City of Las Cruces, has been told it cannot do so without the consent of the United States, disputes that position, and intends to litigate the issue in this lawsuit. (Pltf. Mem. of Law in Opp. to Mots. to Dism., pp. 12-13) In addition, the Court's order requesting supplemental briefing stated, as one of the issues Plaintiff is apparently raising, the following: "that it is entitled to a judgment declaring that 43 U.S.C.A. § 521 does not apply to EBID, or to any agreement EBID might wish to enter into regarding conversion of water to uses other than irrigation, because EBID has paid all of the construction costs originally advanced by the United States to pay for the irrigation project operated and managed by EBID." (Doc. 33) The Court therefore does not understand the assumption by the United States that Plaintiff is not attempting to challenge the application of § 521 to the conversion contracts it wishes to enter into with the City of Las Cruces. The bottom line, however, is that neither party cited any authority regarding this issue.

In an attempt to determine whether this issue is even ripe for the Court's consideration, the Court ordered the parties to inform the Court " whether EBID has actually entered into a water-supply agreement with the City of Las Cruces, or whether it merely plans to do so at some time in the future." (Doc. 33) Plaintiff, in response, submitted copies of several documents, without explaining what the documents are or how they are relevant to this issue. (Pltf. Suppl. Brief, Exhs. D-H) Some of these documents seem to indicate that the City of Las Cruces is leasing Project water from a company that owns water-righted land within Plaintiff's boundaries and is one of Plaintiff's members. No party, however, has informed the Court whether such leases should be subject to §

521, or arguably require the approval of the United States, or have any connection at all to the conversion-contract issue.[12]

It is apparent that Plaintiff's issue could be significant both for the United States and for irrigation districts which, like Plaintiff and EPCWID, have repaid their construction obligations to the United States. Plaintiff has completely failed, however, to show that the issue is ripe for this Court's consideration. In addition, Plaintiff has cited no law for the Court to apply to even determine, as an initial matter, whether Plaintiff might have a viable claim. Under the facts alleged by Plaintiff, there appears to be no current controversy or threat of impending litigation that could be remedied if this Court were to step in and address the issue. The Court therefore finds that the issue is not ripe for consideration at this point. This portion of Plaintiff's claim will be dismissed without prejudice.

**Conclusion**

Based on the foregoing discussion, Plaintiff's request for a special master, Plaintiff's attacks on the 1998 conversion contract, and Plaintiff's claim requesting a declaration of the terms of a joint operating agreement will be dismissed with prejudice. Due to this dismissal, the Court need not address EPCWID's argument that it is entitled to Eleventh Amendment immunity. Plaintiff's claim that it has the right to enter into conversion contracts with the City of Las Cruces, absent approval from the United States, will be dismissed without prejudice.

---

[12]The United States has apparently not challenged the validity of the water lease, and did not indicate any plans to do so in its supplemental memorandum.

Dated this 2d day of July, 2002.

                                                /s/ Bruce D. Black
                                                BRUCE D. BLACK
                                                United States District Judge

**Attorneys:**

**For Plaintiff:**
Beverly J. Singleman
Stephen A. Hubert

**For Defendant United States:**
R. Lee Leininger
Ray Hamilton

**For Defendant EPCWID:**
Maria O'Brien
James Speer