**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

———————

ELEPHANT BUTTE IRRIGATION DISTRICT,

        Plaintiff,

v.                                            No. CIV 00-1309 BB/KBM

UNITED STATES DEPARTMENT OF THE
INTERIOR, BUREAU OF RECLAMATION,
et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

      This matter comes before the Court pursuant to the Court's prior opinion of July 2, 2002 (Doc. 39), as well as a motion to intervene (Doc. 44) by the City of Las Cruces ("City"). In the prior opinion the Court provided an opportunity for the parties to request reconsideration of any part of the Court's analysis and holding. Subsequently, each of the parties filed memoranda addressing the Court's opinion. In addition, the City filed its motion to intervene, which has been fully briefed. This opinion therefore discusses two matters: (1) whether the Court's analyses of the issues, contained in the prior opinion, were correct; and (2) whether the City should be allowed to intervene in this action.

      **Disposition of Claims in Prior Opinion:** The Court previously held as follows: (1) nothing submitted to the Court to date has justified the appointment of a Special Master who would be required to govern relations between Elephant Butte Irrigation District ("EBID"), El Paso County

1

Water Irrigation District ("EPCWID"), and the United States; (2) the United States is not contractually obligated to enter into a joint operating agreement with EBID and EPCWID; (3) EBID has no standing to challenge or attempt to invalidate the 1998 conversion contract entered into by EPCWID and the United States; and (4) the issue of whether the United States must approve any change in use of EBID water, from agricultural to municipal and industrial ("M & I") use, is not yet ripe for consideration.

The last of these holdings is an integral part of the question as to whether the City should be allowed to intervene in this lawsuit, and will be discussed in that section of the opinion. As to the first three holdings, the Court has considered the submissions of the parties and continues to believe the holdings are correct. However, the Court does have the following comments concerning the holdings and the parties' responses. First, as to the special master issue, EBID contends the request for appointment of a special master is not a claim for relief, but a remedy. EBID also contends the Court should not have rejected this remedy before allowing EBID to engage in discovery as to the claims it is raising. The purpose of appointing a special master is merely to assist the court in arriving at and implementing the proper decision. F.R.C.P. Rule 53; *La Buy v. Howes Leather Co.*, 352 U.S. 249, 256-57 (1957). It is an extraordinary action that must be justified by extraordinary circumstances. *Id.*; *see also McCormick v. Western Kentucky Navigation Inc.*, 993 F.2d 568, 569-70 (6th Cir. 1993). Nothing in the complaint for declaratory judgment, or any of the pleadings and materials submitted by the parties, has given any indication to the Court that such extraordinary circumstances are present in this case. In addition, nothing in those same pleadings is sufficiently specific as to justify allowing the parties to engage in discovery on any claim for which appointment of a special master might be necessary.

As to the joint-operating-agreement issue, the Court continues to believe that none of the grounds argued by EBID provides authority for the Court to essentially write a contract for the parties. Again, EBID maintains the Court should have allowed discovery as to the parties' intentions prior to deciding this issue. The Court notes EBID had ample opportunity to raise allegations as to the parties' intentions, in the complaint and subsequent pleadings, and failed to do so. All the Court has been presented with is the following: (1) the parties agreed to enter into a joint operating agreement in the future, that would cover a number of topics; and (2) the parties have been unable to reach a consensus on the terms of such an agreement. As discussed in the prior opinion, there is no joint operating agreement for the Court to enforce, and the Court cannot create one for the parties. However, the Court does note that if the situation becomes such that the lack of an operating agreement causes violations of EBID's or EPCWID's rights under the reclamation laws, or any other applicable statutes, the Court's decision in this case should not be construed as barring EBID or EPCWID from raising such violations as grounds for relief in a different case.

Finally, with respect to the 1998 conversion contract, the Court's prior opinions and orders attempted to discern what interest EBID might have in the contract, or how that contract might harm EBID's rights under its own contracts with the United States. EBID emphatically states that the Court has been mistaken in its efforts. For example, EBID states it has no interest in preventing EPCWID from selling water to the City of El Paso, or in making such sales itself, or in attempting to obtain a share of the proceeds of such sales. Based on EBID's latest response, EBID's only interest in the conversion contract is that the conversion contract acknowledges that the United States owns the water it delivers to EPCWID, and acknowledges that consent of the United States (in the form of a conversion contract) is required before the use of any water provided to EPCWID can be

3

changed from agricultural use to M & I use. In effect, therefore, EBID's only objection to the conversion contract is EBID's fear that the contract might create binding, or at least harmful, precedent concerning the question of whether EBID needs United States approval before changing the use to which its own water is put. This objection is not sufficient to give EBID standing to challenge the 1998 conversion contract, to which it is not a party. *See, e.g., Nat'l Lime Ass'n v. EPA*, 233 F.3d 625, 636 (D.C. Cir. 2001) (stating that possibility of adverse precedent is "clearly insufficient" to provide Article III standing); *In re: Vic Supply Co., Inc.*, 227 F.3d 928, 930 (7th Cir. 2000) (ordinarily, only a party to a contract can challenge its validity). Furthermore, EPCWID's apparent concessions cannot bind EBID, and have no legal force outside the contractual relationship between EPCWID and the United States. For that reason, EBID's fears cannot provide EBID with standing to challenge the 1998 conversion contract.

**City's Right to Intervene in this Action, and Ripeness of EBID's and City's Issue:** The Court will address the ripeness question first, as there is no need to decide whether the City should be allowed to intervene if the issue the City seeks to address is not yet ripe. As the parties are aware, the issue EBID and the City wish to litigate is whether 43 U.S.C. § 521 applies when EBID, or water-righted landowners within EBID, wish to change the use of their water rights from agricultural use to M & I use. The United States has informed the City and EBID that § 521 does apply to such transactions, and that permission from the United States is necessary. EBID and the City both believe that § 521 does not apply because EBID has repaid all amounts it owed to the United States under the reclamation laws, and has taken over management and control of the water distribution facilities located within EBID.

In the Court's prior opinion, the Court expressed concern that this issue was not ripe for litigation, because there was no evidence of a pending or imminent change of use of any EBID water from agricultural to M & I use. In response to the Court's concern, the City presents the following: (1) the City is in the process of changing its primary source of municipal water from groundwater, supplied by an aquifer, to surface water; (2) toward that end, the City has successfully lobbied the state legislature to make changes in New Mexico's water laws, allowing municipalities to become members of irrigation districts and allowing them to lease water rights for up to forty years; (3) the City has purchased 376 acres of water-righted land, located within the boundaries of EBID; (4) the City has leased the water rights appurtenant to 88 other acres of water-righted land within EBID's boundaries, and plans to lease more such water rights appurtenant to many more acres of land; (5) in order to use the water represented by the above water rights for municipal purposes, the City must obtain approval to change the use of the water from agricultural use to M & I use; (6) the City does not believe the necessary approval must come from the United States, but believes the approval need only be obtained pursuant to New Mexico's water laws; (7) the City plans to begin building a water treatment plant, to treat the surface water described above, within seven years; and (8) in order to obtain funding for the construction of the treatment plant, the City must know whose approval is required to convert its leased and owned water rights from agricultural use to M & I use.

In response to the above facts and argument, Defendants maintain there is no current controversy because the City is not currently attempting to enter into any conversion contracts. Defendants point out that the water treatment plant will not be built for several years, and that the date the treatment plant is completed is the earliest date it will be necessary to convert agricultural water to M & I water. This position, however, ignores several crucial factors. First, the issue of who

must approve the conversion contracts must be resolved long before the conversion actually occurs. The City cannot wait until the water treatment plant is constructed, and only then resolve the issue of how it will obtain the water that will supply the plant. The City has presented evidence indicating that a secure source of water is necessary before the City will be able to obtain the funding needed to build the treatment plant. Any judicial or administrative decisions on this issue will likely be appealed. While the Court is hopeful that the legal process would be completed long before seven years have expired, the Court is aware that sometimes delay is inevitable in cases such as this one.

This is not a case, then, where the City has done nothing concerning the conversion process, and where it is uncertain whether conversion will occur at all in the future. The City has taken concrete steps, including obtaining leases of water rights and purchasing water-righted land, to begin the conversion process. As the Tenth Circuit has pointed out, ripeness is a question of timing. *Rio Grande Silvery Minnow v. Keys*, ___ F.3d ___, 2003 WL 21357246 (10th Cir.). In deciding whether an issue is ripe, a court must balance the need for a decision against the risks of making the decision now. *Id.* One factor to be considered is whether the issue is purely a legal one, or whether substantial facts remain to be developed before an informed decision can be made. *Id.* The Court must ask whether addressing the issue at this time would be of practical assistance in setting the underlying controversy to rest. *Id.* Given the *Silvery Minnow* discussion and the facts of this case, the Court finds that the § 521 issue is now ripe for resolution. It is primarily a legal issue, with some peripheral facts that are likely to be largely undisputed. The City and EBID (but especially the City) need a decision as soon as possible, as to whose approval they need in order to convert agricultural water to M & I water. Such a decision, when finalized, will allow them to engage in long-term planning concerning the crucial issue of supplying water to the City's growing population. *See id.*

(resolution of the issue on appeal may permit the parties to fully address long-term planning and water management issues). The Court therefore reverses its prior determination that the § 521 issue is not ripe for resolution. *See Jicarilla Apache Tribe v. Supron Energy Corp.*, 479 F.Supp. 536, 548 (D.N.M. 1979) ("Fairness and justice require that I right wrongs when it is in my power to do so. Revision of prior rulings in this action is within the scope of my authority."), *aff'd in part, rev'd in part,* 728 F.2d 1555 (10th Cir. 1984).

The next question is whether the City should be allowed to intervene in this case, or whether EBID will be required to litigate the § 521 issue alone. The City argues it should be allowed to intervene as of right, or at minimum on a permissive basis, under Federal Rule of Civil Procedure 24. Under Rule 24, a party may intervene as of right if the application to intervene is timely, the applicant claims a legally protectable interest in the subject of the action, that interest may as a practical matter be impaired or impeded as a result of the litigation, and that interest is not adequately represented by any current party to the lawsuit. *Utahns for Better Transp. v. United States Dep't of Transp.*, 295 F.3d 1111, 1115 (10th Cir. 2002).

Before addressing the intervention factors as they apply to the City, however, the Court must discuss a preliminary issue raised by both Defendants. They maintain the City cannot join this lawsuit because there is no waiver of sovereign immunity that would allow the City to bring an action against the United States. In response, the City argues that this Court has supplemental jurisdiction over the City's claim; that is, because the Court has jurisdiction over EBID's claim against the United States, and the City's interests are such that it is entitled to intervene in the lawsuit, the Court may exercise jurisdiction over the City's claim as well, under 28 U.S.C. § 1367. The problem with this argument is that Defendants are not simply arguing that the Court has no jurisdiction in this case, but are

7

pointing out that the United States is entitled to sovereign immunity against the City's claim, absent a waiver of such immunity. The doctrine of sovereign immunity is distinct from the doctrine of subject-matter jurisdiction. The supplemental jurisdiction statute, § 1367, provides subject-matter jurisdiction over certain parties or certain claims that might not otherwise be cognizable in federal court, but does not act as a waiver of sovereign immunity. *See Wilkerson v. United States*, 67 F.3d 112, 119, n.13 (5th Cir. 1995); *Ireland v. Suffolk County of New York*, 242 F.Supp.2d 178, 192-93 (E.D.N.Y. 2003). Therefore, a separate waiver of sovereign immunity must exist before the City can be allowed to intervene in this case.[1]

The Court finds, however, that there is such a separate waiver of immunity here, under the Administrative Procedure Act ("APA"), 5 U.S.C. § 704. The APA provides that a "final agency action for which there is no other adequate remedy in a court" is subject to judicial review. The key question is whether an administrative agency has taken final action concerning the application of § 521 to the City's and EBID's water rights. The administrative agency involved here is the Bureau of Reclamation. The relevant action the Bureau has taken to date includes the following: (1) in March of 2000, the Bureau prepared and issued for public comment a draft paper concerning principles and policies governing the voluntary transfer of water at Bureau of Reclamation projects;

---

[1] The City argues that the logical extension of Defendants' position requires that, if the Court has no authority to hear its claim, the Court also cannot entertain EBID's claim. However, EBID is a contracting entity with the United States, under the reclamation laws. EBID's claim that § 521 does not apply to its water rights is a claim directed at adjudicating, confirming, validating, or decreeing EBID's contractual rights with respect to its water. Therefore, 43 U.S.C. § 390uu provides a waiver of sovereign immunity pursuant to which EBID may litigate the § 521 claim. The City has not argued that it is a contracting entity, and thus may not take advantage of the waiver of immunity provided by § 390uu. *See State of Wyoming v. United States*, 933 F.Supp. 1030, 1039 (D.Wyo. 1996) (§ 390uu waives sovereign immunity only with respect to contracting entities under reclamation laws).

this paper included attachments that, in relevant part, stated that even if a "water user entity" has fully repaid its cost obligation to the United States, the United States would retain the right to set prices for supplying water for M & I purposes and would share in the revenue produced by transfers to M & I use (Exh. A, City's brief in support of motion to intervene, attach. A and B); and (2) in October 2000, the regional director of the Bureau wrote a letter to the City's mayor concerning the City's plans to use Rio Grande Project water to help meet the City's future M & I water needs; this letter stated that the Bureau's solicitor had advised the Bureau that "any water conversion from the Project" would be governed by § 521, added that water conversions would have to be within the framework of federal law as well as state law, and informed the City that activities to acquire land or water from the Rio Grande Project for the purpose of conversion from irrigation to M & I use "should have the involvement of Reclamation and EBID..." (Exh. D, EBID's brief in opposition to Defendants' motions to dismiss complaint).

It is clear that the draft policies issued for public comment cannot be considered a final agency action providing a basis for judicial review. *See HRI, Inc. v. E.P.A.*, 198 F.3d 1224, 1236 (10th Cir. 2000) (agency action is not final if is merely tentative or interlocutory in nature). The letter to the City, however, is a different matter. The letter clearly states the Bureau's position that § 521 applies to conversions of all Project water. It also requires the City to involve the Bureau in any attempts to transfer water use from agricultural to M & I use. Significantly, there is no formal or adjudicatory process by which the City could appeal the letter or the agency decision reflected by the letter. The City's choices appear to be either: (1) ignore the letter, thus risking legal action by the Bureau; or (2) succumb to the Bureau's opinion and proceed with the conversion under the auspices and requirements of the Bureau, thus relinquishing the position that the Bureau has no right to be involved

9

in the conversion of EBID and City water from one use to another.  Nothing in the record indicates the Bureau is ready or willing to reconsider its position on the matter, or that the letter to the City is not the Bureau's final word concerning § 521 and its applicability to EBID water.  Therefore, the letter to the City is not tentative or interlocutory in nature.  Also, the letter determines the City's rights or obligations with respect to its water, and legal consequences will almost certainly flow if the letter is ignored and the City does not obtain Bureau approval for its planned conversions of water. For these reasons, and particularly because no administrative process is available to the City to challenge the Bureau's legal conclusion, the Court finds the October 17, 2000 letter to the City was a final agency action reviewable under the APA.  *See, e.g., HRI* (EPA letter was final agency action, because letter required plaintiff to apply for a federal permit; thus, letter determined rights and obligations and had legal consequences for parties); *Pacific Coast Fe'n of Fishermen's Ass'ns, Inc. v. Nat'l Marine Fisheries Serv.*, 265 F.3d 1028, 1033-34 (9th Cir. 2001) (biological opinion that timber sales unlikely to endanger fish final, where it effectively authorized other action); *cf. Reliable Automatic Sprinkler Co., Inc. v. Consumer Product Safety Comm'n*, 324 F.3d 726, 732 (D.C. Cir. 2003) (agency letter requesting voluntary compliance was not final action, where agency's regulations required agency to hold formal adjudication before it could make a legally binding determination).

Since the APA provides a waiver of the government's sovereign immunity, the City is not barred from intervening.  The Court must still, however, determine whether the City meets the requirements of Rule 24 set out above.  Defendants maintain the City has not met any of those requirements.  First, Defendants argue the motion to intervene is not timely, since it came after the Court issued its prior opinion holding that the § 521 claim was not ripe.  As Defendants point out, the City admits it was "monitoring" this litigation; Defendants contend the City should have moved

10

to intervene before the Court made any decision on the motions to dismiss. The Court agrees it would have been preferable for the City to try to intervene earlier. However, as is apparent from the Court's prior opinion, that opinion was a trial balloon intended to elicit a response from the parties. The opinion was, then, in the nature of a proposal to end the litigation. In addition, the Court sees no need to force the City to file a new lawsuit, raising the same § 521 issue as this one, when EBID will be proceeding with this case in any event. The prudent thing to do if such a separate lawsuit were filed would be to consolidate the two cases, and the Court can avoid wasting resources by instead allowing the City to intervene in the current case. Finally, since this case has never proceeded beyond the motion-to-dismiss stage, the Court does not believe Defendants will be prejudiced if the City is allowed to intervene as co-Plaintiff at this time.[2]

Defendants also argue the City has no protectable interest in the § 521 claim, and that its interest will not be impaired as a result of the litigation. The Court disagrees. As an owner of water rights located within EBID, the City has the same interest in the § 521 claim as does EBID. That interest is the asserted right to convert its water rights from agricultural use to M & I use without any input or restriction from the United States. The City's unrestricted use of purchased water, avoiding any regulation of that transfer by the United States, is a legally protectable interest (assuming that the City's and EBID's § 521 argument is meritorious). In addition, if the § 521 issue is litigated without the City as a party, there is a clear risk that its interest will be impaired as a result of the litigation. That is, if EBID does not prevail, the resulting decision will apply to all water-rights owners within EBID, including the City.

---

[2]The Court acknowledges that the City has moved to intervene as Defendant, rather than Plaintiff. Since the City is in the same position as EBID and is raising the same claim as EBID, the City's proper place in this lawsuit is as Plaintiff.

11

The final requirement is that the City make a "minimal" showing that its interests "may" not be adequately represented by EBID. *See Utahns*, 295 F.3d at 1117. As the City has pointed out, its interests are not entirely congruent with EBID's interests. EBID must represent a large number of landowners who are largely agricultural users. It is not guaranteed that a majority of those users will continue to support the City's efforts to convert irrigation water into M & I water. Furthermore, the City's interests in the § 521 issue appear to be more urgent, at this time, than EBID's. The City is the entity that must plan for a long-term supply of water for its citizens, build a surface-water treatment plant, and ensure a supply of water for that plant. The City is already acquiring water for these purposes. EBID's interests, as a potential supplier of the water the City will need, appear to be more abstract. The Court therefore finds the City has made the required minimal showing that EBID may not represent its interests adequately.

Based on the foregoing discussion, the Court will allow the City to intervene as a matter of right, as a Plaintiff in this litigation.

**Conclusion:** As a result of this opinion, the status of this case will be as follows: (1) all claims will be dismissed except the § 521 claim; (2) EPCWID is dismissed as a party, since the § 521 claim is solely brought against the United States, not EPCWID;[3] (3) the City will be allowed to intervene in the case as a Plaintiff; and (4) a scheduling conference will be docketed to establish new deadlines for discovery, dispositive motions, and trial.

---

[3] Should EPCWID claim an interest in resolution of the § 521 issue that is similar to EBID's and the City's, and wish to remain in the case as a party, EPCWID should inform the Court. In that instance, EPCWID should also inform the Court whether it wishes to remain a Defendant or become a Plaintiff.

**ORDER**

A Memorandum Opinion having been entered in this case, it is hereby ORDERED that all claims be dismissed, except the claim based on 43 U.S.C. § 521; that the City be allowed to intervene in this case and be denominated a Plaintiff; and that EPCWID be dismissed as a party, subject to reinstatement upon request made within thirty days.

Dated this 2nd day of July, 2003.

*[signature]*
BRUCE D. BLACK
United States District Judge

**Attorneys:**

**For Plaintiff:**
Beverly J. Singleman
Stephen A. Hubert

**For Intervenor City of Las Cruces:**
Jay F. Stein
James C. Brockman

**For Defendant United States:**
R. Lee Leininger
Raymond Hamilton

**For Defendant EPCWID:**
Timothy J. De Young
Maria O'Brien
James L. Speer